Estate of A. C. Hewitt, Sr., Deceased, A. K. Hewitt and A. C. Hewitt, Jr., Executors v. Commissioner.
Estate of A. C. Hewitt v. Commissioner
Docket No. 19730.
United States Tax Court
1950 Tax Ct. Memo LEXIS 207; 9 T.C.M. (CCH) 383; T.C.M. (RIA) 50114; April 27, 1950
*207 Richard E. Thigpen, Esq., 1903 Liberty Life Bldg., Charlotte, N.C., and Arthur M. Jenkins, Esq., for the petitioners. E. M. Woolf, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $10,581.06 in the income and victory tax of A. C. Hewitt, Sr., (hereafter called of $22,926.67 in his income tax for the Hewitt) for the fiscal year ended February 29, 1944, and a deficiency fiscal year ended February 28, 1945. The fiscal year ended February 28, 1943 is also involved by reason of the forgiveness feature of the Current Tax Payment Act of 1943. The only issue for decision is whether the Commissioner erred in determining that Hewitt's son, A. Kenneth Hewitt, and his daughter, Evelyn Hewitt Copenhaver, were not recognizable as partners for tax purposes and that the partnership income credited to them in accordance with the partnership agreement is taxable to Hewitt. Findings of Fact Hewitt died on October 26, 1948, after filing the petition in this proceeding. His returns for the years involved herein were filed with the collector of internal revenue for the district of North Carolina. Hewitt and *208 his wife, Willie Maud Hewitt, who lived in Hendersonville, owned real estate in Marion, North Carolina. The lessee of that property was operating a hosiery mill on the property. The mill had been unsuccessful and in December, 1937, the tenant advised Hewitt that he would have to cancel his lease and go out of business. He suggested that Hewitt buy the business and give it to his children. Hewitt and his wife had four children. None of the children lived at Marion. Their oldest son, Kenneth, born July 5, 1901, was a Lutheran minister assigned in 1937 to a parish at Rural Retreat, Virginia. Their second son, Albert C. Hewitt, Jr., born April 2, 1904, was an unsuccessful professional singer in New York in 1937. Their third son, A. Jack Hewitt, born December 31, 1909, was employed in Waynesville, North Carolina, and their daughter, Evelyn, born March 22, 1915, was a housewife, living with her husband. Hewitt discussed the possible purchase of the mill business with Kenneth at the latter's home in Rural Retreat, Virginia, during the 1937 Christmas holidays. They summoned Albert from New York, and upon his arrival the three of them travelled to Marion, North Carolina, to inspect the *209 business and discuss its purchase with the operating tenant. Hewitt's wife was strongly in favor of acquiring the business as an investment for the children. Evelyn and her husband, Wayne Copenhaver, were also consulted on the matter. A decision to make the purchase was reached. No member of the family had had any experience in the mill or hosiery business. Hewitt was then employed by the Gulf Refining Company. Kenneth had been in the meat and grocery business from 1923 to 1925 prior to entering the ministry. Hewitt and his wife borrowed $12,000 from a building and loan association on March 5, 1938, giving as security for the loan a mortgage upon the building which housed the mill and upon other property including their own home. The $12,000 was used to purchase the hosiery business on March 1, 1938. Both Hewitt and Albert were named as vendees in the sale. An additional sum of $4,000 was borrowed by Hewitt and his wife in 1940 to finance the purchase of some machinery. The same mortgage security was given as for the $12,000 loan in 1938. The entire loan was paid off out of the earnings of the business and the mortgage was satisfied on July 17, 1942. Hewitt and Albert entered *210 into an agreement at the time the business was purchased on March 1, 1938, whereby Albert was to be allowed a drawing account of $25 per week in return for his services as manager of the mill. He was also to receive, when the net earnings of the business had amounted to $12,000, a bonus of a one-fourth undivided interest in the mill as full payment for services rendered during that period of time. A capital interest of $3,000, approximately a one-fourth interest, was transferred by Hewitt to Albert in September, 1939, and appropriate entries were made in the investment accounts on September 30, 1939 to show the changes. Hewitt transferred to Kenneth, Jack and Evelyn, each, a capital interest of $3,500 on September 6, 1941. He transferred to Albert at the same time an additional $3,500 interest which was offset by a debt of $746.83 which Albert owed him. Those amounts were charged against Hewitt's capital account and credited to the capital accounts of the sons and daughter. The transfers made on September 6, 1941, constituted completed gifts. Each donee was fully aware at that time that he or she had received a capital interest in the business. Hewitt's wife received no interest *211 in the business and did not become a partner, Hewitt's capital account after the transfers showed a credit balance of $8,585.22. Hewitt and his four children, Kenneth, Albert, Jack and Evelyn, entered into the following partnership agreement on or about September 6, 1941: "These articles of co-partnership made this the sixth day of September, A.D., 1941, between A. C. Hewitt, Sr., A. C. Hewitt, Jr., parties of the first part, and A. Jack Hewitt, Mrs. Evelyn Hewitt Copenhaver, of McDowell County, State of North Carolina, and Rev. A. Kenneth Hewitt of Konnarock Virginia, parties of the second part. "WITNESSETH: That it is the intention of said parties to form a co-partnership for the purpose of carrying on the business of the manufacture and sale of hose and other textile products, for which purpose they have agreed to the following terms, to the faithful performance of which they mutually bind and engage themselves each to the other, his or her heirs, executors and administrators: "FIRST: The style of said co-partnership shall be temporarily, Blueridge Hosiery Mill, but on and after the first day of March A.D. 1942 the style of said co-partnership shall be the Hewitt Hosiery *212 Mills, and it will continue for the term of at least ten years from the above date, except in the case of the death of either of the said parties within the said term, or earlier by unanimous agreement to dissolve the same. "SECOND: That the book value of the assets of the co-partnership now represent an investment of $26,726.99, and the said parties of the first part and the said parties of the second part are the proprietors and owners of the assets of said co-partnership in the following proportions as scheduled below, that is to say: A. C. Hewitt Sr.
$ 8,585.22
A. C. Hewitt Jr.
7,641.79
A. Kenneth Hewitt
3,500.00
A. Jack Hewitt
3,500.00
Mrs. Evelyn Hewitt Copenhaver
3,500.00
Total
$26,726.99
"THIRD: That all profits which may accrue to said co-partnership shall be divided, and all losses happening to said firm, whether from bad debts, depreciation of goods, or any other cause, and all expenses of the business, shall be borne by the said parties in the aforesaid proportions of their interest as shown in the preceding paragraph. "FOURTH: That the said A. C. Hewitt, Sr., shall devote his time and attention to the business of the said co-partnership *213 as the General Manager; that A. C. Hewitt, Jr., shall devote and give all his time and attention to the business of said firm as superintendent; and A. Jack Hewitt shall devote and give all his time and attention to the business of the said firm as assistant Superintendent and shipping clerk; and it is further stipulated and agreed that A. C. Hewitt, Sr., as the General Manager, of said co-partnership shall have the right, power and privilege of determining any and all wages, or wage scales, paid to any partner or employee by the said co-partnership and shall further have the right, power and privilege of determining the general policies of the business operated by the co-partnership. "FIFTH: That all the purchases, sales, transactions and accounts of the said firm shall be kept in regular books, which shall always be open to the inspection of all partners and their legal representatives at reasonable times, and said books shall be audited at least once per year. "SIXTH: That this co-partnership shall continue for a period of ten years and no partner shall be allowed to withdraw from the same during the said period of time except by death; and it is further stipulated and agreed *214 by and between the co-partners that no partner is or shall be entitled to draw, receive or demand any dividend, or to draw, receive or demand any part of the earnings of the co-partnership until all the indebtedness of the copartnership is paid in full and discharged, and further, that no partner is entitled to draw, receive or demand any dividend of any part of the earnings of said copartnership unless all the partners unanimously agree for the payment of the same, except any partner may withdraw, from the earnings of said firm, but not exceeding his or her proportionate share, the amount necessary for the payment of income taxes, provided the said income tax is due by reason of any salary or earnings received or due from the said co-partnership. "SEVENTH: That neither of said partners shall subscribe any bond, sign or endorse any note of hand, accept, sign or endorse any draft or bill of exchange, or assume any other liability, verbal or written, either in his own name or the name of the firm, for the accommodation of any other person, firm or corporation whatsoever without the consent and approval of A. C. Hewitt, Sr., nor shall either partner loan any of the funds of the co-partnership *215 without such consent and approval; and furthermore, no transaction out of the usual course of business shall be taken without the previous consent and approval of A. C. Hewitt, Sr. "EIGHTH: That neither partner shall withdraw any of the capital investment from the said business of the co-partnership without the unanimous consent of all the other co-partners, and whenever an account between the partners is stated at the end of any accounting period, and it shall appear that one of the partners has withdrawn more than his or her share, the excess so withdrawn shall be repaid immediately; and each partner agrees to leave their earnings, on his or her part of the said co-partnership, in the business so long as the same is needed in the business during the ten year period, this need to be determined by A. C. Hewitt, Sr. at his discretion or until there is a unanimous consent on the part of all the partners for the withdrawal of the same or any part thereof. "IN WITNESS hereof, the said parties of the first part and the said parties of the second part have hereunto set their hands and seals, the day and year first above written." Hewitt moved from Hendersonville to Marion in the latter *216 part of 1940 or early 1941. He had retired from the Gulf Refining Company because of poor health. He did not take an active part in the partnership business. He served only in an advisory capacity, spending but an hour or two at the mill each day and leaving the actual management of the business to Albert. Albert moved to Marion in February, 1938, and has been active in the business since its purchase. He devoted his full time to the partnership business during the years here involved as superintendent and general manager. Jack was employed by the mill in August, 1938, and has been active in the business ever since as assistant superintendent, shipping clerk and head of the finishing department. Wayne and Evelyn Copenhaver moved to Marion in January, 1941, when Wayne was hired as a bookkeeper by Hewitt Hosiery Mills. He and Evelyn were absent from Marion, except when they returned to visit, from November, 1942 until February, 1946, during which time he was engaged in war work elsewhere. Evelyn, a housewife with two minor children, worked in the mill occasionally, answering the telephone and doing odd jobs. She rendered no other services to the partnership and received no salary. *217 Evelyn's capital account during the period September 6, 1941 to November 30, 1946 showed two withdrawals, other than for income taxes, in the total amount of $123.11. Kenneth was a minister employed by the Board of American Missions from 1941 through 1945 and lived at Konnarock, Virginia. This was approximately 120 miles from Marion. He attended partnership meetings at Marion three or four times a year, but received no salary. He had no intention of giving up the ministry and going into business as an active partner at the time the partnership agreement was entered into on September 6, 1941. Kenneth's capital account during the period September 6, 1941 to November 30, 1946 showed withdrawals, other than for income taxes, in the total amount of $903.18. Hewitt Hosiery Mills filed a partnership return for each of the years involved reporting therein salaries and net profits as follows: Year ended February 29, 1944
Share of
Partnership
Salary
Net Profits
A. C. Hewitt, Sr.
$4,200.00
$20,872.34
A. C. Hewitt, Jr.
6,000.00
16,613.07
A. Jack Hewitt
2,400.00
7,609.00
A. Kenneth Hewitt
None
7,609.03
Evelyn Hewitt Copen-
haver
None
7,609.03
Year ended February 28, 1945
A. C. Hewitt, Sr.
$6,500.00
$44,832.46
A. C. Hewitt, Jr.
9,000.00
31,736.88
A. Jack Hewitt
4,500.00
16,726.98
A. Kenneth Hewitt
None
16,460.19
Evelyn Hewitt Copen-
haver
None
16,685.26
*218 Each partner's distributive share, after salaries, was computed on the basis of his or her capital account. Undrawn earnings were credited to the capital accounts. The Hewitt Hosiery Company was incorporated October 18, 1946. Hewitt, Albert, Jack, Kenneth, Evelyn and her husband, Wayne, were the incorporators, and the stock of the corporation was issued to them as follows: A. C. Hewitt, Sr.
738 shares
A. C. Hewitt, Jr.
680 shares
A. J. Hewitt
394 shares
A. K. Hewitt
394 shares
Evelyn Copenhaver
393 shares
H. Wayne Copenhaver
1 share
The assets of the partnership were transferred to the corporation for $260,000 of capital stock, which was issued to the partners on the basis of their capital accounts. Hewitt did not include in his income for the fiscal years ended February 29, 1944 and February 28, 1945, any part of the share of the partnership income credited to Kenneth and Evelyn on the partnership books. The Commissioner determined that the partnership income credited in those years to Kenneth and Evelyn is taxable to Hewitt. Hewitt, Albert, Kenneth, Jack and Evelyn really and truly intended to join together for the purpose of carrying on the business *219 as partners, and Kenneth and Evelyn are recognizable as partners for income tax purposes. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The question here is whether Kenneth and Evelyn are to be recognized as partners in the hosiery mill business for the taxable years. Apparently the Commissioner refused to recognize them as partners because they did not take as active a part in the business as did their two brothers, Albert and Jack, both of whom were recognized as partners. All of the children received all or a part of their interests in the business as gifts from their father. The gift in one case was just as complete and effective as it was in the other cases. The father intended that Kenneth and Evelyn should have interests equal to that given Jack. All of the five partners fully intended to join together for the purpose of carrying on the business. The two brothers who performed most of the services received salaries to compensate them for their extra work. Hewitt did not take an active part in the operation of the business despite the fact that he received a salary. Thus, this is not a case where the father actually earned income *220 by his services and allowed his children to enjoy it. The formation of the partnership was not a tax avoidance scheme. It carried out an intention and an agreement arrived at before the business was purchased. The father first allowed the business to operate long enough to pay back to him the amount of money he had invested in it and then, as he had promised, he gave to each of the children a share in the business. Kenneth did not give very much of his time to the business during the taxable years. Nevertheless, he did attend meetings and he was consulted. His advice and counsel were always regarded as important by the others. He participated in the operation of the business to some extent and it was always the intention of the parties that he should participate as a partner. Evelyn performed some minor services for the business but received no salary for them. She participated in the partnership conferences and kept in touch through her husband who was actively employed in the business on a salary basis although he was not a partner. The record as a whole shows that these five people really and truly intended to engage in this business as partners and the Commissioner erred in failing *221 to recognize their agreement fully for tax purposes. The shares of the partnership earnings which were distributable to Kenneth and Evelyn were not taxable income of their father. Decision will be entered under Rule 50.